UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN C. CARTER,

                         Plaintiff,

v.                                                          5:14-CV-1315
                                                               (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      KAREN T. CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Karen C. Carter ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I. **RELEVANT BACKGROUND**

A. **Factual Background**

Plaintiff was born on September 13, 1966. (T. 125.) Generally, Plaintiff's alleged disability consists of cervical degenerative disc disease, shoulder impairment, and post-traumatic stress disorder ("PTSD"). (T. 148.) Her alleged disability onset date is July 15, 2010. (T. 125.) Her date last insured is September 30, 2010. (T. 21.) Her past relevant work consists of "aide," assembler, and fast food worker. (T. 150.)

B. **Procedural History**

On August 17, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 125.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 20, 2012, Plaintiff appeared before ALJ F. Patrick Flanagan. (T. 37-77.) On March 14, 2013, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-34.) On August 26, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 23-30.) First, the ALJ found that Plaintiff met the insured status

requirements through September 30, 2010 and Plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 15, 2010 through her date last insured of September 30, 2010. (T. 23.) Second, the ALJ found that Plaintiff had the severe impairments of obesity, obstructive sleep apnea, degenerative disc disease of the cervical spine, and degeneration of the left shoulder at the acromioclavicular articulation. (T. 24.) The ALJ determined that Plaintiff's hypertension and hyperlipidemia were non-severe impairments. (*Id.*) The ALJ determined that Plaintiff's PTSD was diagnosed after her date last insured and prior to her date last insured Plaintiff did not have a medically determinable mental health impairment; therefore, Plaintiff's mental health impairment was "non-severe." (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 26.)[1] The ALJ afforded Plaintiff additional restrictions within light work. The ALJ determined that Plaintiff:

> could occasionally use her left upper extremity. With her left upper extremity she [was] limited to reaching at shoulder level. With her right upper extremity reaching in all directions [was] unlimited. Handling, fingering and feeling [was] unlimited. She [could] occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. She [could] never climb ladders, ropes or scaffolds. She [had] no visual or communicative limitations. She should avoid concentrated exposure to extreme cold, vibration and hazards.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567.

(*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 29.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three arguments.  First, Plaintiff argues the ALJ failed to properly evaluate medical evidence in the record.  (Dkt. No. 12 at 11-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ's credibility determination was unsupported by substantial evidence because the ALJ erred in analyzing the required factors when assessing Plaintiff's credibility.  (*Id.* at 15-17.)  Third, and lastly, Plaintiff argues the ALJ's step five determination was unsupported by substantial evidence.  (*Id.* at 17-18.)

### B.     Defendant's Arguments

In response, Defendant makes three arguments.  Defendant argues the ALJ properly evaluated treating source evidence.  (Dkt. No. 13 at 7-10 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 10-18.)  Third, and lastly, Defendant argues the ALJ's step five determination was proper.  (*Id.* at 18-20.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

5

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Assessed Opinion Evidence in the Record

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 7-9 [Def.'s Mem. of Law].) The Court adds the following analysis.

6

Plaintiff argues the ALJ erred in his assessment of the opinion evidence proffered by Plaintiff's treating mental health provider. Specifically, Plaintiff argues the ALJ "entirely and improperly disregarded" the opinion of Plaintiff's mental health provider, Ahmy Brock, L.M.F.T.[2] (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) Further, Plaintiff argues that the ALJ failed to apply the regulatory factors to determine the weight to accord Ms. Brock's opinion under SSR 06-03p. (*Id.* at 14.) Here, the ALJ properly assessed the medical opinion evidence in question. Ms. Brock's opinion concerned the period in time after Plaintiff's date last insured, and the opinion did not provide additional relevant information regarding the severity of an impairment established prior to Plaintiff's date last insured. Since the ALJ concluded the opinion in question dealt with an impairment which arose after the date last insured, the Court need not address Plaintiff's argument regarding whether the ALJ properly applied the Regulatory factors in his evaluation of the opinion in question.

To be sure, an ALJ will evaluate every medical opinion, "regardless of its source." 20 C.F.R. § 404.1527(c). The Regulations divide sources into two categories: "medical sources," such as licensed physicians and psychologists, and "other sources" such as therapists and nurse-practitioners. *See Id.* at § 404.1513(a)-(d). Only medical sources can establish an impairment (diagnose) and provide statements about what a plaintiff can still do despite limitations. *Id.* at § 404.1513(c). "Other sources" can provide helpful evidence to show the "severity" of an impairment. *Id.* at § 404.1513(d).

The ALJ did not entirely disregard Ms. Brock's opinion as Plaintiff alleges. The ALJ specifically discussed Ms. Brock's opinion, and Plaintiff's mental health treatment, in his step two analysis. (T. 24-25.) The ALJ also discussed Plaintiff's mental health

---

[2] Licensed Marriage and Family Therapist

symptoms in his RFC and credibility analysis. (T. 27.) In his discussion, the ALJ acknowledged Ms. Brock was not an acceptable medical source under 20 C.F.R. § 404.1513. (T. 24.) Ultimately, the ALJ concluded that the medical source statement provided by Ms. Brock had limited probative value in assessing the severity of Plaintiff's mental health impairment because the statement, and the treatment underlying the statement, were completed after Plaintiff's date last insured.[3]

To be sure, medical evidence obtained after a plaintiff's date last insured can be used to show that a plaintiff was disabled prior to her date last insured. *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989). Further, "evidence bearing upon [a plaintiff's] condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present...." *Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (*citing Lisa v. Secretary of Dep't of Health and Human Serv.,* 940 F.2d 40, 44 (2d Cir.1991)). However, the evidence in question here does not disclose the "severity and continuity" of Plaintiff's mental health impairment, because Plaintiff failed to establish that she had a mental health impairment prior to her date last insured. *See also Salvaggio v. Apfel*, 23 Fed. Appx. 49, 50-51 (2d Cir. 2001) (benefits properly denied where multiple sclerosis sufferer could not provide medical evidence showing that she was under a disability prior to the date her insured status expired); *Velez v. Barnhart*, No. 03-CV-0778, 2004 WL 1464048 at *4 (S.D.N.Y.

---

[3] Plaintiff's brief does not address the fact that Plaintiff's mental health treatment at the Brownell Center started in June of 2011, after Plaintiff's date last insured is September 2011.

May 28, 2004) (application for benefits correctly denied where plaintiff could not show that he was under a disability prior to his last insured date).

The record was void of any indication that Plaintiff sought or received treatment for a mental health impairment prior to her date last insured. The first mention of a mental health impairment in the record was from a treatment note dated April 4, 2011. (T. 325.) On April 4, 2011 Nurse Agyeman noted that Plaintiff indicated her medication for depression wasn't effective and he referred her to psychiatric treatment. (*Id.*) In June of 2011 Plaintiff began treatment at the Brownell Center. At the time of the hearing Plaintiff's medical records did not contain treatment records from Brownell Center. (T. 41.) Plaintiff brought with her to the hearing a copy of a "medical source statement" from the Brownell Center and asked for assistance in obtaining the remaining records. (T. 41-42.) The records from the Brownell Center were obtained after the hearing and prior to the ALJ's decision. The ALJ thoroughly discussed the opinion evidence and treatment notes from the Brownell Center. Accordingly, the ALJ's determination affording "no evidentiary weight" to Ms. Brock's medical source statement was supported by substantial evidence, or rather, the lack of substantial evidence.

The ALJ properly assessed the opinion evidence from Ms. Brock and other providers at the Brownell Center. The ALJ accurately concluded at step two that Plaintiff did not suffer from a severe mental impairment. In making this determination the ALJ relied on the lack of medical records and other evidence in the file that would indicate Plaintiff suffered from a mental health impairment prior to her date last insured. Although the treatment notes and medical source statement from the Brownell Center were for a period after Plaintiff's date last insured, the ALJ still reviewed the evidence

9

and took it into consideration. The ALJ properly determined that the evidence provided postdated Plaintiff's date last insured and did not provide insight into the severity of a mental health impairment because no impairment was established in the record prior to the date last insured.

> B.     **Whether the ALJ Properly Assessed Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 10-18 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*citing Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to

> which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credibly. (T. 27.) The ALJ concluded Plaintiff's statements were not supported by medical evidence in the record and contradicted by other evidence. (*Id.*) In making his credibility determination the ALJ discussed Plaintiff's testimony regarding her symptoms, he took into consideration her activities of daily living, and he discussed the medical evidence in the record. (T. 27-28.)

Plaintiff argues the ALJ erred in discrediting Plaintiff by noting Plaintiff's testimony in which she indicated she was able to raise her left arm above her head despite pain. (Dkt. No. 12 at 16 [Pl.'s Mem. of Law].) Here, the ALJ did not conclude

11

that Plaintiff had no limitations in her ability to raise her left arm. To be sure, the ALJ concluded Plaintiff's statements that lifting her arm caused her pain, as well as just knowing she had to raise arm caused her pain, detracted from her credibility. (T. 27.) However, the ALJ's RFC determination limited Plaintiff to reaching to shoulder height with her left arm and limited overall use of her left arm to "occasionally." (T. 26.) Although the ALJ concluded Plaintiff's testimony weakened her credibility, Plaintiff's limitations were actually reflected in the ALJ's RFC determination limiting Plaintiff's ability to reach. Therefore, the ALJ did not err in this aspect of his credibility determination.

Plaintiff further argues the ALJ erred in his reliance on Plaintiff's activities of daily living. (Dkt. No. 12 at 17 [Pl.'s Mem. of Law].) The ALJ thoroughly discussed Plaintiff's activities of daily living and provided a complete analysis of how those activities did not support Plaintiff's statements. *See* 20 C.F.R. § 404.1529(c)(3)(i). For example, Plaintiff's statements regarding her limitations with lifting were not supported by her ability to cook, clean, and care for herself or young children. *See also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding the ALJ properly relied on plaintiff's activities of daily living including the ability to walk dogs and clean consistent with an RFC to perform light work). Therefore, the ALJ properly relied on Plaintiff's activities of daily living as one factor in his overall credibility analysis.

In making his credibility analysis, the ALJ applied the factors outlined in the Regulations. The ALJ properly took into consideration Plaintiff's activities of daily living and her statements regarding her pain and contributory factors regarding the limiting

effects of her impairments. Therefore, the ALJ's credibility determination was supported by substantial evidence and remand is not recommended.

      **C.**      **Whether the ALJ's Step Five Determination was Proper**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 18-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (*quoting Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Plaintiff argues the ALJ erred in his reliance on the Grids because the underlying RFC failed to account for the non-exertional limitations imposed by Plaintiff's PTSD. (Dkt. No. 13 at 18 [Pl.'s Mem. of Law].) As discussed in Part IV.A., the ALJ appropriately assessed the evidence in the record pertaining to Plaintiff's PTSD. The ALJ's step five determination was proper because the ALJ did not err in his evaluation of Plaintiff's PTSD in his RFC analysis. Plaintiff does not argue the step five determination failed to account for any other non-exertional limitation found in the RFC determination. Therefore, the ALJ properly relied on the Grids at step five of his decision and remand is not recommended.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 12, 2015

William B. Mitchell Carter
U.S. Magistrate Judge